UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SHAVONDA HAWKINS, on behalf of
herself and all others similarly situated,

       Plaintiff,

v.

ADVANCEPIERRE FOODS, INC.,

       Defendant.

Case No. 15-cv-2309-JAH (BLM)

**ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS (DOC. # 11)**

## INTRODUCTION

Pending before the Court is Defendant AdvancePierre Foods, Inc.'s ("Defendant") motion to dismiss Plaintiff Shavonda Hawkins' ("Plaintiff") complaint. (See Doc. # 11). The motion has been fully briefed by the parties. For the reasons set forth below, the Court **GRANTS** Defendant's motion to dismiss and **DISMISSES** Plaintiff's complaint **WITH PREJUDICE**.

## BACKGROUND

Defendant manufactures, distributes, and sells microwaveable sandwiches under the brand name Fast Bites. (Doc. # 1, ¶¶ 3, 10). Plaintiff is a consumer who has purchased Fast Bites microwaveable sandwiches "as many as a hundred times" since January 1, 2008. Id. ¶¶ 11, 64, 94. On October 14, 2015, Plaintiff filed a putative class action lawsuit challenging Defendant's use of partially hydrogenated oil ("PHO") in its microwaveable sandwiches.

1  (See Doc. # 1). Plaintiff asserts that PHO is a source of artificial trans fat and that "there

2  is 'no safe level' of PHO or artificial trans fat intake" because PHO and artificial trans fat

3  cause inflammation, cardiovascular heart disease, diabetes, cancer, Alzheimer's disease, and

4  cognitive damage. Id. ¶¶ 4, 16, 17, 54.  Plaintiff further asserts that there are safe,

5  economical alternatives to PHO, which Defendant "unfairly" declines to use in its Fast Bites

6  microwaveable sandwiches. Id. ¶ 7. As a result of purchasing and consuming Defendant's

7  microwavable sandwiches, Plaintiff contends that she suffered both pecuniary and physical

8  injuries, and thus brought suit against Defendant. Id. ¶¶ 85, 86.

9       In her complaint, Plaintiff asserts claims for: (1) unlawful business practices in

10  violation of California's Unfair Competition Law, California Business and Professions Code

11  §§ 17200, et seq. ("UCL"), (2) unfair business practices in violation of the UCL, (3)

12  nuisance in violation of California Civil Code §§ 3479–93, and (4) breach of the implied

13  warranty of merchantability. Id. at 23–27.[1] Plaintiff asserts these claims individually and

14  on behalf of a class of all individuals "who purchased in the United States, on or after

15  January 1, 2008 . . . for household or personal use, microwavable sandwiches products [sic]

16  manufactured or distributed by Defendant containing partially hydrogenated oil." Id. ¶ 94.

17  Plaintiff's claims are based solely on Defendant's use of PHO; Plaintiff does not assert that

18  the Fast Bite sandwiches were mislabeled. Id. ¶ 89.

19       On November 6, 2015, Defendant filed a motion to dismiss Plaintiff's complaint,

20  arguing that Plaintiff failed to properly allege any of her claims and that Plaintiff's claims

21  are preempted by federal law. (See Doc. # 11). Plaintiff filed a response in opposition to

22  Defendant's motion to dismiss on January 18, 2016, and Defendant filed a reply in support

23  of its motion to dismiss on January 25, 2016. (See Docs. # 12, 14). The Court then took

24  Defendant's motion to dismiss under submission pursuant to Civil Local Rule 7.1.d.1. (See

25  Doc. # 13).

26

27

28  _____

[1] Page numbers cited refer to the page numbers assigned by the Court's Electronic Court Filing system.

On March 11, 2016, Defendant filed a notice of supplemental authority in support of its motion to dismiss providing the Court with an opinion recently issued in a putative class action case entitled Backus v. Nestle USA, Inc., 167 F. Supp. 3d 1068 (N.D. Cal. 2016), in which the plaintiff asserted similar claims against a food manufacturer based on the manufacturer's use of PHO in its products. (See Doc. # 15).[2] On April 28, 2016, Plaintiff filed an *ex parte* motion for leave to file a surreply in opposition to Defendant's motion to dismiss, which Defendant opposed. (See Docs. # 16, 17). This Court granted Plaintiff's motion for leave to file a surreply on May 11, 2016, and Plaintiff filed her surreply that same day. (See Docs. # 18, 19). On October 7, 2016, Defendant filed a second notice of supplemental authority providing the Court with an opinion from another case involving similar claims entitled Backus v. ConAgra Foods, Inc., No. C 16–0454 WHA, 2016 WL 3844331 (N.D. Cal. July 15, 2016).[3] (See Doc. # 20).

## LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for failure to state a claim for relief.  Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. Li v. Kerry, 710 F.3d 995, 999 (9th Cir. 2013).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.  In other words, "the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff

---

[2] Defendant provided this Court with a copy of the relevant opinion printed from LexisNexis. However, the Court refers to the opinion's citation as assigned in the Federal Supplement.

[3] Defendant again provided this Court with a copy of the relevant opinion printed from LexisNexis, but the Court refers to the opinion's Westlaw citation.

to relief." <u>Moss v. U.S. Secret Serv.</u>, 572 F.3d 962, 969 (9th Cir. 2009) (citing <u>Iqbal</u>, 556 U.S. at 678). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Iqbal</u>, 556 U.S. at 679.

In reviewing a motion to dismiss under Rule 12(b)(6), a court must assume the truth of all factual allegations and construe the factual allegations in the light most favorable to the nonmoving party. <u>Cahill v. Liberty Mut. Ins. Co.</u>, 80 F.3d 336, 337–38 (9th Cir. 1996). However, legal conclusions need not be taken as true merely because they are "cast in the form of factual allegations." <u>Ileto v. Glock Inc.</u>, 349 F.3d 1191, 1200 (9th Cir. 2003). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 557). The court may consider facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the court takes judicial notice. <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 688–89 (9th Cir. 2001). If a court determines that a complaint fails to state a claim, the court should grant leave to amend unless it determines that the pleading could not possibly be cured by the allegation of other facts. <u>Doe v. United States</u>, 58 F.3d 494, 497 (9th Cir. 1995).

## <u>DISCUSSION</u>

Defendant argues that Plaintiff's complaint should be dismissed for failure to state any claims and because Plaintiff's claims are preempted by federal law. The Court will first address the federal regulations on the use of PHO in human food. Then, the Court will address whether federal law provides a basis for Plaintiff's UCL claims and whether Plaintiff's state claims are preempted by federal law.

### A.   <u>The Federal Regulatory Scheme on PHO</u>

In 1906, Congress passed the Pure Food and Drugs Act, "which was the first comprehensive federal legislation designed to protect consumers from fraud or misrepresentation in the sale of food and drugs." <u>Yumul v. Smart Balance, Inc.</u>, No. CV

10–00927 MMM (AJWx), 2011 WL 1045555, at *6 (C.D. Cal. Mar. 14, 2011) (citing JAMES T. O'REILLY, FOOD AND DRUG ADMINISTRATION § 3:1–13 (3d ed. 2009)). Then, in 1938, Congress passed the Food, Drug, and Cosmetic Act ("FDCA") as successor legislation. See Federal Food, Drug, & Cosmetic Act, Pub. L. No. 75–717, 52 Stat. 1040 (1938). The FDCA established the Food and Drug Administration ("FDA") within the Department of Health and Human Services and empowered the FDA to protect public health by regulating food safety and labeling. 21 U.S.C. § 393. Specifically, the FDCA requires the FDA to (i) ensure that "foods are safe, wholesome, sanitary, and properly labeled," (ii) promulgate regulations to enforce the provisions of the FDCA, and (iii) enforce its regulations through administrative proceedings. See 21 U.S.C. §§ 371, 393(b)(2)(A); 21 C.F.R. § 7.1 et seq.

The FDCA also prohibits "[t]he introduction or delivery for introduction into interstate commerce of any food . . . that is adulterated." 21 U.S.C. § 331(a). A food is adulterated "if it . . . contains . . . any food additive that is unsafe within the meaning of" 21 U.S.C. § 348.[4] Id. § 342(a)(2)(C)(i). In relevant part, a food additive is deemed unsafe unless there is "a regulation issued . . . prescribing the conditions under which such additive may be safely used," and the additive is used in conformity with the regulation. Id. § 348(a)(2). In addition, the FDCA explicitly exempts from the definition of "food additive" foods that are "generally recognized . . . as having been adequately shown through scientific procedures (or, in the case of a substance used in food prior to January 1, 1958, through either scientific procedures or experience based on common use in food) to be safe . . . ." Id. § 321(s). This status is referred to as "Generally Recognized as Safe" or "GRAS." 21 C.F.R. § 170.30. Substances that are GRAS may be used in food without FDA approval or review. 21 U.S.C. §§ 321(s), 348(b). The FDA maintains a non-exhaustive list of foods that

---

[4] A food additive is "any substance the intended use of which results . . . in its becoming a component or otherwise affecting the characteristics of any food . . . if such substance is not generally recognized, among experts qualified . . . to evaluate its safety . . . to be safe under the conditions of its intended use." 21 U.S.C. § 321(s).

have been deemed GRAS. 21 C.F.R. § 170.30(d). PHOs are not on this list. See 21 C.F.R. Part 184.4.

On June 17, 2015, the FDA issued a final determination on the use of PHO in food ("Final Determination"). See Final Determination Regarding Partially Hydrogenated Oils, 80 Fed. Reg. 34650 (June 17, 2015). In the Final Determination, the FDA recognized that common PHOs "have been considered GRAS by the food industry based on a history of use prior to 1958," while other PHOs have been deemed GRAS. Id. at 34651. However, the FDA announced that based on current scientific evidence "there is no longer a consensus that PHOs . . . are [GRAS] for use in human food. . . ." Id. at 34669. The FDA set June 18, 2018, as a compliance date by which time food producers must have removed PHO from their food products or petitioned for and received approval to use PHO in their products. Id. at 34668. By selecting a compliance date three years in the future, the FDA expressed an intention to "minimiz[e] market disruptions by providing industry sufficient time to identify suitable replacement ingredients for PHOs, to exhaust existing product inventories, and to reformulate . . . affected products." Id. at 34669.

Several months later, on December 18, 2015, the President signed into law the Consolidated Appropriations Act of 2016 ("2016 CAA"). Consolidated Appropriations Act, 2016, Pub. L. No. 114–113, § 754, 129 Stat. 2242, 2284 (2015). Section 754 of the 2016 CAA, which discusses the use of PHO in food and the FDA's Final Determination, states as follows:

> No partially hydrogenated oils as defined in the [Final Determination] shall be deemed unsafe . . . and no food that is introduced or delivered for introduction into interstate commerce that bears or contains a partially hydrogenated oil shall be deemed adulterated . . . by virtue of bearing or containing a partially hydrogenated oil until the compliance date as specified in such order (June 18, 2018).

Id.

6

15cv2309

**B.** <u>Federal Law Does Not Provide a Basis for Plaintiff's Claim under the Unlawful Prong of Section 17200</u>

Plaintiff alleges that Defendant violated the unlawful prong of section 17200 of the UCL, in part, by using PHO in its microwavable sandwiches. (<u>See</u> Doc. # 1, pg. 23–24). Section 17200 prohibits "any unlawful, unfair or fraudulent business act or practice." CAL. BUS. & PROF. CODE § 17200. Under the unlawful prong of section 17200, violations of other laws are treated as unlawful practices that are independently actionable under the UCL. <u>See</u> <u>Goldman v. Standard Ins. Co.</u>, 341 F.3d 1023, 1036 (9th Cir. 2003). Plaintiff argues that Defendant has violated numerous sections of the FDCA by using PHO in its microwavable sandwiches, and has thus violated the unlawful prong of section 17200. (<u>See</u> Doc. # 1, pg. 23–24). However, as explained below, the Court finds that the current use of PHO in food products does not violate federal law. Therefore, federal law cannot serve as a basis for Plaintiff's claim for violation of the unlawful prong of section 17200.

By choosing June 18, 2018, as the compliance date, the FDA makes evident in the Final Determination that it is not currently unlawful to use PHO in food products. Final Determination Regarding Partially Hydrogenated Oils, 80 Fed. Reg. 34650, 34668 (June 17, 2015). If the FDA intended to make illegal the current use of PHO in food, it is reasonable to expect that the Final Determination would have contained language to that effect. Instead, the Final Determination states that, by offering three years' advanced notice of the compliance date, the FDA intended, in part, to allow affected parties to "exhaust existing product inventories." <u>Id.</u> at 34669. Thus, the Final Determination specifically contemplates and allows for the continued sale of food products that may contain PHO until June 18, 2018.

Further, the 2016 CAA explicitly says that foods shall not be considered adulterated based on their PHO content and PHOs shall not be deemed unsafe under the FDCA until June 18, 2018. <u>See</u> Consolidated Appropriations Act, 2016, Pub. L. No. 114–113, § 754, 129 Stat. 2242, 2284 (2015). This is a clear step by Congress to preclude parties, like Plaintiff, from bringing suit against food manufacturers based on use of PHO before the

15cv2309

compliance date, or, as another court explained it, section 754 is "essentially [Congress's] ratif[ication] [of] the FDA's Final Determination." See Backus v. Nestle USA, Inc., 167 F. Supp. 3d 1068, 1073–74 (N.D. Cal. 2016).

Finally, other courts have held that the current use of PHO in food products neither violates federal law nor provides a basis for a claim of unlawful business practices under section 17200. See Backus v. Gen. Mills, Inc., 122 F. Supp. 3d 909, 926–28 (N.D. Cal. 2015) (finding that the use of PHO in food products is not currently unlawful under federal law such that federal law "cannot serve as the basis for [the plaintiff's] 'unlawful' UCL claim"); Backus v. ConAgra Foods, Inc., No. C 16–0454 WHA, 2016 WL 3844331, at *2– 3 (N.D. Cal. July 15, 2016) (examining federal regulations on the use of PHO and holding that the plaintiff had not plausibly alleged that the sale of food products containing PHO violates federal law, so federal law could not serve as the basis for his "unlawful" section 17200 claim).

In similar fashion, the Court finds that Plaintiff fails to plausibly allege that Defendant violated federal law by manufacturing and selling microwavable sandwiches that contain PHO. Therefore, Plaintiff's claim for violation of the unlawful prong of section 17200 of the UCL fails to the extent it is premised on alleged violations of federal law.

## C. Plaintiff's State Claims Are Preempted

Defendant contends that Plaintiff's claims attempt to "make it immediately unlawful to market or sell" in the United States any food product containing trans fat. (Doc. # 11- 1, pg. 32). In doing so, Defendant asserts that Plaintiff's claims directly conflict with federal regulations and are thus preempted. (Doc. # 11-1, pg. 32–33; Doc. # 14, pg. 7–9). Defendant first argues that Plaintiff's claims conflict with the FDA's regulatory scheme that allows for the production and sale of foods containing PHO through June 18, 2018. (Doc. # 11-1, pg. 32–33; Doc. # 14, pg. 7–8). Defendant further argues that Plaintiff's claims contravene the FDA's goal in providing three years' notice of the compliance period so as to minimize market disruptions and allow existing food inventories to be used up. (Doc. # 14, pg. 7–8). Defendant also notes that since it filed its motion to dismiss Congress passed

1 and the President signed into law the 2016 CAA. (Doc. # 14, pg. 6) (citing Consolidated

2 Appropriations Act, 2016, Pub. L. No. 114–113, § 754, 129 Stat. 2242, 2284 (2015)).

3 Defendant argues that section 754 of the 2016 CAA expressly preempts Plaintiff's UCL

4 claims and impliedly preempts all of Plaintiff's state claims because "making it immediately

5 unlawful to sell any food products containing trans fat" would contravene Congress's

6 intention in enacting section 754, which was to thwart frivolous lawsuits until 2018. (Doc.

7 # 14, pg. 8–9).

8      In opposition, Plaintiff argues that her claims are not preempted by federal law.

9 Plaintiff contends that her claims are not expressly or impliedly preempted by the FDA's

10 regulatory scheme on PHO because, although the FDA set the compliance date relating to

11 PHO usage as June 18, 2018, the FDA nonetheless stated in the Final Determination that

12 PHOs are not GRAS and did not expressly permit food manufacturers to use PHO in their

13 food products until the compliance date. (Doc. # 12, pg. 30–32). Put another way, Plaintiff

14 asserts that the FDA's Final Determination did not declare that PHOs are considered safe

15 until 2018; rather, the Final Determination just set forth the date the FDA would begin

16 enforcing a prohibition on use of PHO in food. (Doc. # 19, pg. 2–4). Therefore, Plaintiff

17 contends that the "[r]emoval of PHOs does not conflict with the FDA's determination,"

18 and her claims are not preempted. (Doc. # 12, pg. 32). Plaintiff also argues that her claims

19 are not preempted by the 2016 CAA. (Doc. # 19, pg. 2–4). Plaintiff contends that states

20 have "plenary control" over the regulation of food, and the 2016 CAA does not alter that

21 right. Id. at 2. Finally, Plaintiff argues that the 2016 CAA does not create a safe harbor

22 because it does not expressly permit the use of PHO. Id. at 5.

23      In reply, Defendant argues that Plaintiff erroneously stated that the FDA declared

24 PHOs unsafe in the Final Determination when, in fact, the Final Determination said only

25 that "there is no longer a consensus" that PHOs are GRAS. (Doc. # 14, pg. 7). Defendant

26 again reasserts that Plaintiff's claims are preempted under federal law. Id. at 7–9.

27      Under the Supremacy Clause of the United States Constitution, federal law can

28 preempt and displace state law. See U.S. CONST. art. VI, cl. 2; Ting v. AT & T, 319 F.3d

1126, 1135 (9th Cir. 2003). There are three types of preemption: (1) express preemption,[5] (2) field preemption,[6] and (3) conflict preemption.  Ting, 319 F.3d at 1135 (citations omitted); see also Bank of America v. City and County of San Francisco, 309 F.3d 551, 558 (9th Cir. 2002). The latter two types of preemption are often referred to as implied preemption. See Bank of America, 309 F.3d at 558; Aguayo v. U.S. Bank, 653 F.3d 912, 918 (9th Cir. 2011); Donell v. Kowell, 533 F.3d 762, 775 (9th Cir. 2008). This case presents a question of conflict preemption, specifically whether Plaintiff's state claims are barred under that doctrine.

"Conflict preemption is found where 'compliance with both federal and state regulations is a physical impossibility,' or where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" Ting, 319 F.3d at 1136 (citations omitted). When considering whether a state claim is barred by conflict preemption, the Court focuses on Congress's purpose and the goals and policies of the federal law. Id. Additionally, there is a presumption against preemption when the inquiry involves a field that "has been traditionally occupied by the States." De Buono v. NYSA–ILA Med. & Clinical Servs. Fund, 520 U.S. 806, 814 (1997) (quotations and citations omitted); see also Golden Gate Rest. Ass'n v. City and County of San Francisco, 546 F.3d 639, 647 (9th Cir. 2008).

Because the regulation of health and safety is a field traditionally occupied by states, the presumption against preemption applies. See Medtronic, Inc. v. Lohr, 518 U.S. 470, 475 (1996) (regulation of health and safety matters is a field traditionally occupied by states); accord Chem. Specialties Mfrs. Ass'n v. Allenby, 958 F.2d 941, 943 (9th Cir. 1992). Nonetheless, the Court finds the presumption overcome and Plaintiff's state law claims barred under the doctrine of conflict preemption.

---

[5] A state law is expressly preempted when "Congress enacts an explicit statutory command that state law be displaced." Ting v. AT & T, 319 F.3d 1126, 1135 (9th Cir. 2003).

[6] "Field preemption exists 'where the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress 'left no room' for supplementary state regulation.'" Id. at 1136 (citations omitted).

1   　　　All of Plaintiff's state claims are premised on Defendant's use of PHO in its

2   microwavable sandwiches. As Defendant aptly explains, Plaintiff's claims are an attempt to

3   make it "immediately unlawful" under California law to market or sell any food product

4   that contains PHO. (Doc. # 11-1, pg. 32). However, the FDA considered and rejected

5   recommendations that the Final Determination should be effective immediately. Final

6   Determination Regarding Partially Hydrogenated Oils, 80 Fed. Reg. 34650, 34668 (June

7   17, 2015). Instead, the FDA selected a compliance date three years in the future so affected

8   parties could petition for and receive approval from the FDA to use PHO in their products,

9   or exhaust current inventory of food products that may contain PHO and create new

10  products sans PHO. Id. at 34668–69.  By providing advance notice of the compliance date,

11  the FDA hoped to minimize market disruptions. Id. Here, allowing Plaintiff's remaining

12  state claims to go forward would contravene the FDA's regulatory scheme on the current

13  use of PHO in food products and directly impede the goals and objectives of that scheme.

14  It would seriously disrupt the market by causing food manufacturers to immediately throw

15  out all existing products containing PHO without affording manufacturers time to

16  reformulate the products, find alternative ingredients to PHO, and manufacture the

17  revamped products. These are consequences that the FDA explicitly sought to avoid.

18  　　　Additionally, allowing Plaintiff to proceed on her state claims would contravene

19  Congress's purpose in passing section 754 of the 2016 CAA, which was to prevent economic

20  disruption and preclude lawsuits against food producers based on PHO content until the

21  compliance date set forth in the Final Determination. This purpose is demonstrated in

22  legislative overviews of the 2016 CAA, which state that section 754 was drafted in response

23  to concerns of market interference and is meant to prevent "frivolous lawsuits."[7] The Court

---

24

25  [7] See H.R. REP. NO. 114–205, at 71 (2015) (stating concerns of "economic disruption in the marketplace and . . . unnecessary litigation" surrounding the use of PHO in food in light of the Final Determination); FY 2016 Omnibus Summary – Agriculture Appropriations, HOUSE APPROPRIATIONS COMMITTEE, *available at* http://appropriations.house.gov/uploadedfiles/12.15.15_fy_2016_omnibus_-_agriculture_-_summary.pdf (last visited Nov. 1, 2016) (stating that "[t]he legislation includes several policy provisions, including . . . [a] provision to amend FDA policy relating to the regulatory treatment of partially hydrogenated oils so that the baking industries and small businesses are not subject to frivolous lawsuits"); see also Legislative Digest, Dec. 18, 2015,

26

27

28

finds that Plaintiff's current action is one of the frivolous suits that Congress meant to preclude until 2018.

Because Plaintiff's claims stand as a direct obstacle to the FDA's objective to minimize market disruptions by providing three years' notice of the compliance date on use of PHO in food and Congress's objective to bolster the FDA's Final Determination through the passage of section 754 of the 2016 CAA, Plaintiff's remaining state claims are barred by conflict preemption.  In making this determination, the Court joins with other courts which have dismissed nearly identical claims based on preemption.  See Backus v. Nestle USA, Inc.,167 F. Supp. 3d 1068, 1071–74, 1077 (N.D. Cal. 2016) (finding that the plaintiff's state law claims, premised on defendant's use of PHO in its food product, were preempted by the Final Determination and the 2016 CAA, and dismissing the claims without leave to amend); accord Backus v. ConAgra Foods, Inc., No. C 16–0454 WHA, 2016 WL 3844331, at *3–4 (N.D. Cal. July 15, 2016).

<u>CONCLUSION AND ORDER</u>

Based on the foregoing, **IT IS HEREBY ORDERED** that Defendant's motion to dismiss is **GRANTED** and Plaintiff's complaint is **DISMISSED WITHOUT LEAVE TO AMEND**.


Dated:  November 8, 2016

_____
JOHN A. HOUSTON
United States District Judge

---

REPUBLICAN POLICY COMMITTEE, *available at* https://policy.house.gov/legislative/legislative-digest/friday-december-18-2015 (last visited Nov. 1, 2016) (stating that "the omnibus . . . amends an FDA policy relating to the regulatory treatment of partially hydrogenated oils to prevent frivolous lawsuits").

15cv2309